UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| MATTHEW GARY RICHARDSON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 3:14-CR-25-TAV-CCS-1 |
| | ) | 3:16-CV-398-TAV |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

# MEMORANDUM AND ORDER

On June 24, 2016, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 32]. He based the request on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*].[1] The government filed a response in opposition to collateral relief [Doc. 35], Petitioner replied in turn [Doc. 36], and this Court denied the petition in a Memorandum Opinion and Judgment Order entered on December 29, 2016 [Docs. 39, 41]. Specially, it concluded that at least three of Petitioner's prior Georgia burglary convictions remained violent felonies under the ACCA enumerated-offense clause after the *Johnson* decision and *Mathis v. United States*, 136 S. Ct. 2243 (2016), and denied a certificate of appealability (COA) [Doc. 39 pp. 3–10]. Before the Court is Petitioner's motion to alter or amend its prior ruling pursuant to Federal Rule of Civil Procedure 59(e) [Doc. 41].

---

[1] On February 11, 2016, the Court appointed Federal Defender Services of Eastern Tennessee ("FDSET") for the limited purpose of reviewing the case to determine whether Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET submitted both the original petition for relief and the instant motion to reconsider denial of that petition [Docs. 32, 41].

## I. STANDARD OF REVIEW

A motion to alter or amend judgment under Rule 59(e) may be granted for a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). It is improper to use the motion "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (citation omitted). The Court's discretion to grant relief must be used sparingly, as revising a final judgment is an extraordinary remedy. *Ira Green, Inc. v. Military Sales & Service Co.*, 775 F.3d 12, 18 (1st Cir. 2014).

## II. REQUEST FOR RECONSIDERATION

Petitioner raises two arguments in support of his request that the Court alter or amend its December 29, 2016 Memorandum Opinion and Judgment Order. In the first, he claims that the Court erred when it held that the Georgia burglary statute underlying his convictions is divisible [Doc. 41 pp. 2–3]. In the second, he argues that the Court erred when it denied a COA because, at minimum, reasonable jurists could disagree over the propriety of that conclusion [*Id.* at 3–6].

### A. Reconsideration of Entitlement to Relief

Petitioner argues that the Court erred when it found Georgia Code Annotated § 16-7-1 to be a divisible statute and concluded that at least three of Petitioner's convictions thereunder qualified as predicate offenses under the ACCA enumerated-offense clause [Doc.

41].[2] Specifically, he suggests that the Court failed to adequately "distinguish [between] the use of a particular location as a requirement for sufficient pleading in an indictment from its use as an element of a crime" or take into account "the Georgia Pattern Jury Instructions" submitted in conjunction with the petition [*Id.* at 2 (noting that the instructions only require that jurors agree the defendant entered a "building or dwelling place of another" and thus the enumerated list of locations contained in the Georgia burglary statute constitute means of committing that offense)].

After concluding that Georgia Code Annotated § 16-7-1 is a non-generic provision because some forms of the offense qualify as predicate offenses under § 924(e) and others do not, the Court explained that the propriety of Petitioner's ACCA enhancement depended on

---

[2] The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015).

In *Mathis*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary. 136 S. Ct. 2247–48, 53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated offense clause. *Id.* at 2257.

3

whether or not the burglary statue is divisible or indivisible after the *Mathis* decision [Doc. 39 pp. 4–6]. It went on to explain that any such determination required consideration of: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements [*Id.* at 6]. The Court cited the following as support for its conclusion that the provision at issue "contain[ed] several alterative sets of elements as opposed to alternative means of satisfying a single indivisible set of elements," i.e., is a divisible statute capable of examination under the modified categorical approach:

> Unlike the Iowa statute at issue in *Mathis*, Georgia Code Annotated § 16-7-1 identifies three distinct categories of location that are subject to unlawful entry—(1) the dwelling house of another, (2) any other building, vehicle, railroad car, watercraft, aircraft, or other structure designed for use as the dwelling of another; or (3) any other building, railroad car, aircraft. The Supreme Court made clear in the *Descamps* decision that the use of "or" to separate clauses within a provision is a strong indicator that each clause represents an alternative element for which satisfaction equates to an independent criminal offense. *See Descamps*, 133 S. Ct. at 2281 (explaining that an example of a divisible statute is one "stating that burglary involves entry into a building or an automobile"). While the foregoing weights strongly in favor of finding that the Georgia burglary statute is divisible, the fact that Georgia law requires prosecutors select, identify, and charge the specific location burgled, *see, e.g.*, *Morris v. State*, 303 S.E.2d 492, 494 (Ga. App. 1983) (stating that "where the defendant is charged with burglary, the indictment must specify the location of the burglary" and concluding indictment was sufficient where it charged a building," identified as "the Financial Aid Office and Alumni Office, located at For Valley State College"); *State v. Ramos*, 243 S.E.2d 693, 693 (Ga. App. 1978) (stating that it is not necessary to prove "the specific place" to obtain a theft-by-taking conviction, but it is necessary to prove the "specific location" to obtain a burglary conviction): *Chester v. State*, 140 S.E.2d 52, 53 (Ga. App. 1964) ("It must be alleged and proven in an indictment for burglary that there was a breaking and entering of one of the classes of buildings set out in the statute."), and fact that the Georgia Supreme Court has referred to the location of the crime as "an

4

essential element of the offense," *DeFrancis v. Manning*, 271 S.E.2d 209 (1980), forecloses any doubt.

[*Id.* at 7–8]. Because his state-court indictments indicate that at least three of Petitioner's prior convictions involved violations meeting the generic definition of burglary, the Court found that Petitioner remained an armed career criminal after the *Johnson* decision.[3]

The Court disagrees that it afforded undue weight to the fact that Georgia law requires that location burglarized be included in every burglary indictment. As an initial matter, the United States Supreme Court stated in the *Mathis* decision that indictments are a valid source of information when attempting to determine whether a statutory list of alternatives contains elements or means. Specifically, the Court explained that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element form the list of alternatives." *Descamps*, 133 S. Ct. at 2290. Thus, the fact that prosecutors in Georgia "must select and identify the locational element of the placed burgled—whether that place be a dwelling, building, railroad car, vehicle, or watercraft—is the hallmark of a divisible statute." *Creekmore v. United States*, No. 1:14-cv-8018-SLB, 2017 WL 386660, at *7 (N.D. Ala. Jan. 27, 2017). Even if this Court were to disregard the information contained within indictments as merely a matter of providing sufficient notice, that would not change the fact that the plain language of Georgia Code Annotated § 16-7-1 points toward divisibility, *see id.* at 2281 (explaining locations listed in the disjunctive, i.e., separated by "or," are typically

---

[3] For purposes of § 924(e), the United States Supreme Court defines generic burglary as any conviction, "regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990).

5

indicative of a divisible provision), or the fact that the highest authority on Georgia law has characterized the location burglarized as "an essential element of the offense," *DeFrancis*, 271 S.E.2d at 308; *accord United States v. Grundy*, 842 F.3d 1156, 1166–68 (11th Cir. 2016) (concluding that Georgia Code Annotated § 16-7-1 is a divisible statute); *United States v. Martinez-Garcia*, 625 F.3d 196, 198 (5th Cir. 2010) (same).

To the extent that Petitioner cites the dissent to the *Grundy* opinion in support of his argument that location burglarized must be plead in the indictment but not necessarily agreed upon by the jury and, as a result, cannot be treated as an "element" for purposes of divisibility analysis, the Court remains unpersuaded. While it is true that the Georgia Court of Appeals has characterized the "two essential elements" of Georgia burglary as "lack of authority to enter the dwelling or building . . . [and] intent to commit a felony or theft," *Lloyd v. State*, 308 S.E.2d 25, 25 (Ga. App. 1983)), it did so in an opinion that was focused solely on whether or not the prosecution had proven "lack of authority on the defendant's part to enter the building," *id.* at 25. The reliability of the statement is further brought into question by the fact that the same intermediate appellate court has said that "it must be alleged and *proved* . . . that there was a breaking and entering of one of the classes of buildings set out in the statute," *Chester v. State*, 140 S.E.2d 52, 53 (Ga. App. 1964) (emphasis added), and that "it is necessary to *prove* the specific location of a burglary in order to obtain a conviction," *State v. Ramos*, 243 S.E.2d 693, 693 (Ga. App. 1978) (emphasis added). These latter two articulations combined with the Georgia Supreme Court's unambiguous statement that location burglarized is an essential element of Georgia burglary convince the Court that

6

Georgia Code Annotated § 16-7-1 contains alternative elements as opposed to alternative means of committing a single crime.

To the extent that Petitioner cites *Weeks v. State*, 616 S.E.2d 852 (Ga. App. 2005), and *Davis v. State*, 706 S.E.2d 710 (Ga. App. 2011)—both of which found that variations between the specific location alleged in the indictment and proof ultimately presented at trial did not prevent the jury from returning a conviction, as evidence that the "jury need not identify or agree upon a specific type of structure but, rather, any structure under the statute (generic or non-generic alike) will suffice" [Doc. 41 p. 3 n. 2], the Court disagrees with that interpretation for two reasons.

First, the Court rejects any suggestion that the *Weeks* and *Davis* decisions make it possible for someone charged with a generic version of burglary—burglary of a dwelling—to be convicted of a non-generic version of that same offense—burglary of a watercraft. Such was not the case in either of those cases. Further, Petitioner has not cited and this Court is unaware of any other case in which an individual charged with generic burglary was convicted of a non-generic crime.

Second, in Georgia, the inquiry where there is a variance between an indictment's allegations and the proof adduced at trial is whether "(1) . . . the accused [is] definitely informed as to the charges against him, so that he is able to present his defense, and (2) . . . protected against another prosecution for the same offense." *Battles v. State*, 420 S.E.2d 303, 305 (Ga. 1992). In the *Weeks* decision, the court found that the variance between the location alleged and proven at trial was not fatal because the indictment still provided adequate notice:

7

> The allegations correctly described the structure being unlawfully entered as belonging to Anthony Sexton and as being adjacent to other property having the address of 2479 Mill Creek Roach in Whitfield County. The indictment further identified the date of the attempted burglary. Specifically describing the structure's location and owner and the date of the burglary, the allegations definitely informed weeks as to the charges against him so as to enable him to present his defense and not be taken by surprise. The allegations were further adequate to protect weeks against another prosecution of the same offense.

*Weeks*, 616 S.E.2d at 854–55. The court expressly rejected the defendant's claim that the prosecution had failed to prove he committed the burglary, explaining that "the evidence sufficed to show that [he entered] a building under the statute." *Id.* at 853–54. Similarly, in the *Davis* decision, the court held that the defendant had sufficient notice to defend himself:

> The indictment's description of the structure as a dwelling house as opposed to a building did not mislead Davis in such a manner that impeded his ability to present a subsequent defense or surprise him at trial, and he cannot be subjected to a subsequent prosecution for the burglary of a building in question. Thus, Davis has failed to show that any variance was fatal.

*Davis*, 706 S.E.2d at 717. Notably, neither the *Weeks* nor *Davis* decisions held that location burglarized is not an essential element of Georgia burglary. *Cf. Holder v. State*, 529 S.E.2d 907, 909–10 (Ga. App. 2000) (explaining that the variance between indictment and proof at trial was not fatal because "[t]he date on which the checks were delivered is not an essential element of the offense of deposit account fraud); *Kelly v. State*, 508 S.E.2d 228, 230 (Ga. App. 1998) ("[T]he identity of the person alleged to have been robbed is not an essential element of the crime so as to create a fatal variance."); *Abercrombie v. State*, 243 S.E.2d 567, 568–69 (Ga. App. 1978) (explaining that the variance between indictment and proof at trial was not fatal because "proof of whom a stolen article was received is not an essential element of the crime of receiving stolen property" and "[t]he state's evidence adequately proved all the essential elements of the crime").

8

Petitioner next argues that the Court failed to analyze the Georgia Pattern Jury Instructions attached to his petition for relief [Doc. 41 pp. 2–3], but that omission was intentional. While Pattern Jury Instructions can be helpful where the text of a statute and state court decision interpreting the same are ambiguous, courts need not consider them where the state of the law is clear. In other words, because Pattern Jury Instructions do not have the force of law, they cannot be used to create ambiguity where none otherwise exists. Here, the text of Georgia Code Annotated § 61-7-1 and the state supreme court and intermediate court decisions interpreting that provision make it sufficiently clear that the disjunctive list of locations constitute distinct elements.

For the reasons outlined above and in this Court's original Memorandum Opinion [*see generally* Doc. 39], the Court finds that at least three of Petitioner's prior convictions qualify as predicate offenses independent of the now-defunct ACCA residual provision. As such, Petitioner has failed to demonstrate that his sentence exists in contravention of the laws of the United States.

### B. Reconsideration of COA

Section 2253 permits issuance of a certificate of appealability ("COA") where "the applicant has made a substantial showing of the denial of a constitutional right" and requires that any certificate issued "indicate which specific issue or issues satisfy [that standard]." 28 U.S.C. §§ 2253(c)(2), (3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253 is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *see*

*also Cox v. United States*, No. 1:00-cv-176, 2007 WL 1319270, at *1 (E.D. Tenn. May 4, 2007) (denying request for COA).

In support for his argument that reasonable jurists could disagree over the propriety of this Court's conclusion and corresponding request that the Court reconsider its *sua sponte* denial of a COA, Petitioner notes the following:

> [O]ther jurists of reason have already found [that] this type of claim has merit. In fact, the very case [on which] this Court relies to deny [Petitioner's] request for either a stay or a certificate of appealability is a split decision of a three-judge panel with a vigorous dissent. The heart of the dissent, in fact, is the very issue raised [in Petitioner's request for collateral relief].

[Doc. 41 p. 5]. The decision to which Petitioner refers is the Eleventh Circuit's decision in *United States v. Grundy*—where the majority held that Georgia Code Annotated § 16-7-1 was overly broad but divisible, *Grundy*, 842 F.3d at 1159–1170. Petitioner's point regarding Judge Pryor's detailed dissent in that case is well taken. *Id.* at 1170–80 (J. Pryor, dissenting) (finding the provision overly broad and indivisible based on nearly identical arguments).

While this Court remains confident in the merits of its decision to deny Petitioner's request for collateral relief, the reasonableness of the *Grundy* dissent and fact that the Sixth Circuit has not yet had an opportunity to speak on the issue lead this Court to conclude that it erred when it chose to *sua sponte* deny a certificate of appealability. Because the Court recognizes that reasonable jurists could find its assessment of Petitioner's claim debatable, a limited COA will issue.

10

## III. CONCLUSION

For the reasons discussed above, Petitioner's request that the Court alter or amend its Memorandum Opinion and Judgment Order [Doc. 41] is **DENIED** so far as it seeks reconsideration of the Court's denial of collateral relief, but **GRANTED** so far as it seeks reconsideration of the Court's denial of a COA; the request for issuance of a COA is **GRANTED**.

**IT IS SO ORDERED.**

                                          s/ Thomas A. Varlan
                                          CHIEF UNITED STATES DISTRICT JUDGE